**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                       **v.**           **08-CR-195A(Sr)**

**CHRISTOPHER MARANDOLA,**

        **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #11.

## PRELIMINARY STATEMENT

The defendant, Christopher Marandola, is charged in a one-count Indictment with having violated Title 18, United States Code, Section 2252A(a)(5)(B) (possession of child pornography). Dkt. #10. Presently pending before this Court is the defendant's motion to suppress physical evidence. Dkt. ##13 and 18. The government filed opposition to the defendant's motion to suppress. Dkt. ##14 and 22. Oral argument on the defendant's motion was held on February 25, 2009, at which time the Court scheduled an evidentiary hearing to be held on April 23, 2009. Thereafter, the evidentiary hearing was re-scheduled to June 24, 2009. The evidentiary hearing was held on June 24, 2009 and the Court ordered the parties to file post-hearing memoranda no later than August 14, 2009 and to file replies, if any, no later than

August 21, 2009. A transcript of the evidentiary hearing, consisting of one volume, was filed on July 9, 2009. Dkt. #29. The time for filing post-hearing memoranda was extended to August 21, 2009 and replies were due September 4, 2009. Post-hearing memoranda were filed on August 21, 2009 (Dkt. ##31 and 32) and the government filed a reply on September 4, 2009 (Dkt. #33). For the following reasons, it is recommended that defendant's motion to suppress physical evidence be denied.

## FACTS[1]

In or about February 2008, the defendant and his wife, Lisa A. Marandola, resided at 4 Field Avenue, Lancaster, New York, a home they jointly purchased, with their two minor children. (T, pp.3-4.) In or about February 2008, there were two computers in the residence, an Apple G4 and a Dell. (T, p.5.) The Dell computer was purchased using joint marital funds (Lisa Marandola opened a credit card and in exchange, she received a Dell computer, but the credit card balance was paid using joint marital funds). (T, p.6.) The Apple G4 was ordered by the defendant but was purchased through a joint checking account using PayPal. (T, p.6.) At all times relevant to this matter, both computers were located in the living room (family room) of the 4 Field Avenue, Lancaster, New York residence. (T, pp.7-8.) Lisa Marandola testified that she primarily used the Dell computer, but that there were times that she used the Apple G4 to check e-mail. (T, p.7.) Lisa Marandola further testified that the

---

[1] The facts are taken from the transcript of the evidentiary hearing conducted by this Court on June 24, 2009. References to testimony are designated by "T" followed by the appropriate page number(s).

defendant primarily used the Apple G4, but he had access to the Dell computer. (T, p.7.) In addition, Lisa Marandola testified that their 11-year old daughter also used the Apple G4 computer. (T, p.13.) Each of the aforementioned computers had Internet access through Time Warner Cable in the name of Lisa Marandola and Lisa Marandola paid for the Internet access using her own funds. (T, pp.13-15.) Lisa Marandola further testified that sometimes there was a password on the Apple G4 computer. (T, p.16.)

On February 25, 2008, while their children were at school and the defendant was at work, Lisa Marandola testified that she attempted to use the Dell computer to obtain driving directions using Mapquest. (T, p.18.) While she was waiting for the Internet Explorer to load on the Dell computer, Lisa Marandola testified that she bumped the "pad for the white – the Apple [G4] keyboard" and the screen came up and it was not password protected. (T, p.18.) As the Apple G4 monitor turned on, Lisa Marandola testified that she noticed that the defendant had re-named all the icons using science-fiction terms. (T, pp.18-19.) Because all the icons had been re-named using science-fiction terms, Lisa Marandola testified that she was not able to identify which icon was Internet Explorer. (T, p.19.) Lisa Marandola further testified that because she knew that the Apple G4 computer was much faster than the Dell computer, she decided to access the "recent applications" feature on the Apple G4 and from there, intended to navigate to Mapquest. (T, p.19). However, when Lisa Marandola accessed the recent applications feature she observed approximately six names of different video clips. (T, p.19.) Although Lisa Marandola testified that she did not recall any of the names of the video clips, she stated that she "remember[ed] the

gist of it but not the actual names." (T, p.19.) Specifically, with respect to the clips, Lisa Marandola testified as follows:

> Q. What did you do after you hit the drop-down menu and saw these various –
>
> A. The first one, the name had something to do with a three-year-old. I was thinking to myself, this isn't what I think it is. So I clicked on it, and there was a three-year-old in her underwear in a T-shirt rubbing herself suggestively. I only watched approximately five seconds. It disgusted me, and I turned it off.
>
> Q. Okay. Let me stop there. Were these video clips or still photographs?
>
> A. These were video clips.
>
> Q. Having observed that, what did you then do?
>
> A. I looked – I went down the list and picked another one just to see if maybe if that was just a fluke. I don't remember what the other one's name was at all, but it depicted a young girl, maybe around the age of 15 or so, giving a blow job to a older man.
>
> Q. And how many of those video files did you actually go through that day?
>
> A. Those two. I – it disgusted me.

(T, p.20.) Thereafter, Lisa Marandola testified that she was so shaken up by what she saw that she wanted to see some family photographs. (T, p.21.) The only computer that had family photographs on it was the Apple G4 and Lisa Marandola testified that "interspersed between pictures of my kids, was "Daddy does 10-to-12-year-olds" with little girls and vaginally having intercourse with older men. The little girls were blonde-haired and skinny. They looked a lot like my daughter." (T, p.21.) Lisa Marandola testified that approximately one year earlier, she had found images on the Dell

-4-

computer of young children being vaginally penetrated by older men. (T, pp.24-25.) Lisa Marandola further described the images as depicting girls who resembled her daughter and her daughter's best friend and when she confronted the defendant about these images he claimed they were unsolicited pop-ups. (T, pp.24-25.)

In the days following February 25, 2008, Lisa Marandola testified that she spoke with friends and family about how to address with her husband the images that she had discovered on the computer, especially since, in her opinion, some of the images looked like her daughter. (T, p.22.) On February 27, 2008, Lisa Marandola decided to call a sexual abuse hotline. (T, p.26.) While on the phone with the sexual abuse hotline, in what she described as a state of hysteria, Lisa Marandola was connected with someone from the Erie County District Attorney's Office. (T, pp.26-27.) Thereafter, the Lancaster Police Department was contacted by the Erie County District Attorney's Office about what Lisa Marandola had found on the computer. (T, pp.54-55.) Indeed, Lancaster Police Department Detective Donald V. Lynch testified that after receiving information from Assistant District Attorney Colleen Curtin Gable, he contacted Lisa Marandola by telephone to confirm what she had found on the computer. (T, pp.54-55.) Shortly after speaking with Lisa Marandola, Detective Lynch and four other Lancaster Police Department Detectives arrived at the Marandola residence at 4 Field Avenue, Lancaster, New York. (T, pp.55-56.)

On February 27, 2008 at approximately 3:50 p.m., Lancaster Police Department Detectives arrived at the Marandola residence and were invited into the

residence by Lisa Marandola. (T, pp.56-57.) Immediately upon entering the home, the detectives stood in the kitchen and from the kitchen, Detective Lynch testified that he observed the two computers, along with a television, toys, games, and videos, in the living/family room. (T, pp.57-58.) Detective Lynch testified that when asked about the defendant's whereabouts, Lisa Marandola advised the detectives that he would be home from work between 5:00 and 5:30 p.m. (T, p.59.) Detective Lynch further testified that in addition to his concern that the defendant would be returning home soon and could destroy evidence, he was concerned that Lisa Marandola had described that one of the images resembled her daughter and her daughter's friend and at the time, the detectives did not know whether there was a concern about possible molestation. (T, pp.60-61.) Based on the information provided by Lisa Marandola, Detective Lynch contacted Assistant District Attorney Rosanne Johnson who advised Detective Lynch to see if Lisa Marandola would sign a consent to search and further, not to remove any property from the residence that the detectives could tell belonged strictly to the defendant. (T, pp.62-64.)

       Consistent with his instructions from Assistant District Attorney Johnson, Detective Lynch reviewed the Lancaster Police Department Detective Bureau Consent to Search Form with Lisa Marandola. (T, p.62; Gov't Exhibit. 2[2].) In addition, Detective Lynch gave Lisa Marandola the opportunity to ask questions about the consent to search form. (T, p.62.) Detective Lynch testified that he did not recall Lisa Marandola

---

[2] Exhibit references are to those exhibits received in evidence at the June 24, 2009 evidentiary hearing.

asking any specific questions about the consent to search form, other than her indication that she understood the form and understood that by signing the form she was consenting to a search of the first-floor area, strictly the area around the desk, as well as the two computers. (T, p.63.) As reflected on Government Exhibit 2, Lisa Marandola executed the consent to search form on February 27, 2008, at approximately 4:03 p.m., and consented to a search of the following: "4 Field Ave. - Village Lancaster NY 1st floor living room area - Dell Tower Personal Computer (P.C.) - Apple G4 Tower Personal Computer - Desk Area + Desk, CD's [sic], paperss [sic] Dell P.C. Ser. # FRXXX51 - Model # MTC2 Apple G4 P.C. Ser # XB2151Q4MK9 Model # M8493." (Gov't Exhibit 2.)

Approximately 15-20 minutes after she executed the consent to search form, the computers, along with Lisa Marandola and her two children, were taken to the Lancaster Police Station. (T, p.64.) While at the station, Lisa Marandola provided a signed statement to Detective Lynch. (T, p.65; Gov't Exhibit 1.) In her statement, Lisa Marandola described the images she observed; advised that the Apple G4 computer was purchased using a joint checking account; stated that she has used the Apple G4 computer in the past and was never told by the defendant that she could not use it; further stated that before the February 25, 2008 incident, she had not used it since the defendant had password protected it; and confirmed that the Internet service on the Apple G4 is in her name and paid out of her checking account. (Gov't Exhibit 1.)

On February 28, 2008, the computers were taken to the Western New York Regional Computer Forensic Laboratory ("RCFL") to be searched. (T, p.77.) Specifically, Erie County Sheriff's Office Detective Joel Cancilla testified during the evidentiary hearing that on February 28, 2008, he received two computers at the RCFL, a Dell and an Apple G4. (T, p.77.) Detective Cancilla further testified that as a general practice when computers are submitted to the RCFL for analysis, the RCFL requires that they be accompanied by either an executed consent to search form or a search warrant. (T, p.77.) In this instance, Detective Cancilla testified that before he did anything with the two computers submitted on February 28, 2008, he reviewed the consent to search form signed by Lisa Marandola. (T, pp.78-79.)

After reviewing the consent to search form, Detective Cancilla testified that he conducted a "preview search" on both computers. (T, p.77.) According to Detective Cancilla, a "preview search" is when "you take the hard drives out of the computer and you lock them to a write blocker so no writes can be made to the drive and it doesn't alter any of the evidence. Then you can view what's on the drive." (T, p.78.) With respect to the Dell computer, Detective Cancilla testified that his "preview search" did not reveal any suspected child pornography. (T, p.79.) With respect to the Apple G4, Detective Cancilla testified that he found suspected images of child pornography (movies). (T, p.79.) Upon locating the suspected child pornography on the Apple G4, Detective Cancilla testified that he stopped his examination and informed the Lancaster Police Department of his findings. (T, p.80.) During the evidentiary hearing, in response to an inquiry about why he stopped his examination and what

-8-

happened next, Detective Cancilla was asked the following questions and provided the following answers:

> Q. All right. Why did you stop your examination of that computer after you found these images of child pornography?
>
> A. Because the request was for child porn, and I did find it. Once I did find it, I stopped my exam and told them to get a search warrant.
>
> Q. Why?
>
> A. So we could continue it at a later time, because cases that come in – we have hundreds of cases that come in, and this just walked in the door, so we did this one right away. Once we find it, we can get a search warrant and then it can go into regular rotation of exams.
>
> Q. Okay. And was this a special request by the Lancaster Police to have this computer analyzed at the head of the line?
>
> A. Yes.
>
> Q. And you complied with their request?
>
> A. Yes.
>
> Q. Based on the consent?
>
> A. Correct.

(T, pp.80-81.) On March 3, 2008, Detective Lynch applied for and obtained a search warrant from New York State Court of Claims Judge John L. Michalski, authorizing a full search of both the Apple G4 computer and the Dell computer for child pornography. (T, pp.70-71.) Detective Lynch testified that his application and affidavit submitted in support of the search warrant were based on the child pornography found by the RCFL

by Detective Cancilla in his "preview search." (T, p.73.) Based upon the search warrant obtained, the computers were re-assigned to an RCFL examiner other than Detective Cancilla for a more in-depth analysis. (T, p.82.)

## DISCUSSION AND ANALYSIS

**Suppression of Evidence**

In *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), the United States Supreme Court reaffirmed the principle that the search of property, without warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment. *United States v. Matlock*, 415 U.S. 164, 165-66 (1974). This principle was reaffirmed by the United States Supreme Court in *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) wherein it stated:

> The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects (citations omitted). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L Ed.2d 854, 93 S.Ct. 2041 (1973), or from a third party who possesses common authority over the premises, *see United States v. Matlock, supra*, at 171, 39 L.Ed.2d 242, 94 S.Ct. 988.
>
> The Court went on to state:
>
> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment. . . 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? (citation omitted). If not,

then warrantless entry without further inquiry is unlawful unless authority actually existed. But if so, the search is valid.

*Id.* at 188-89.

The burden of establishing the validity of a "consent to search" is upon the government. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion). In meeting its burden of establishing that a consent to search was validly given, the government need only show by a preponderance of the evidence that the consenting party freely and voluntarily gave his consent to search. In this regard, the credibility of the witnesses is a question for the judge who heard them. *United States v. Miley,* 513 F.2d 1191, 1201 (2d Cir.), *cert. denied sub nom.*, *United States v. Goldstein*, 423 U.S. 842 (1975).

> [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

*United States v. Matlock*, 415 U.S. 164, 171 (1974). As the Court of Appeals for the Second Circuit has stated:

> We have held that a third-party consent to a search will validate the search if two prongs are present: first, the third party had access to the area searched, and second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access. *United States v. Gradowski*, 502 F.2d 563, 564 (2d Cir. 1974) (*per curiam*); *see also United States v. Trzaska*, 859 F.2d 1118,

1120 (2d Cir. 1988), *cert. denied*, 493 U.S. 839, 110 S.Ct. 123, 107 L.Ed.2d 84 (1989).

*United States v. Davis*, 967 F.2d 84, 87 (2d Cir.), *cert denied sub nom., Content v. United States*, 506 U.S. 928 (1992).

With respect to the issue of what constitutes "authority" to give consent, the Supreme Court in *Matlock* further stated,

> The authority which justifies third-party consent. . . rests. . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock, supra*, at 171, fn. 7. The Court of Appeals for the Second Circuit has also addressed the issue of "authority" to give consent as follows:

> To satisfy the burden imposed on it by the third party consent principle, the government must show, by a preponderance of the evidence, that the consent to search was freely and voluntarily given, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and was obtained from someone "who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Since third party consent does not involve the vicarious waiver of a defendant's constitutional rights, it validates a search only when a defendant can be said to have assumed the risk that someone having authority over the area to be searched would permit the governmental intrusion in his own right.

*United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir.), *cert. denied,* 454 U.S. 830 (1981)*.*

> As the United States Supreme Court has ruled:
>
> The touchstone of the Fourth Amendment is reasonableness . . . . The standard for measuring the scope of [the consenting party's] consent under the Fourth Amendment is that of "objective" reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the [consenting party]? (citations omitted) . . . .
>
> The scope of a search is generally defined by its expressed object. (citation omitted). . . . We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs.
>
> \* \* \*
>
> The Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the [consenting party's] consent permitted him to [conduct the search that was undertaken].

*Florida v. Jimeno*, 500 U.S. 248-251 (1991); *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir. 1995).

As a threshold matter, the Court notes that the discovery of the suspected child pornography video clips by Lisa Marandola on the Apple G4 computer, whether accidental or deliberate, and whether reasonable or unreasonable, does not constitute a problem pursuant to the Fourth Amendment to the United States Constitution. *See*

-13-

*United States v. Jacobsen*, 466 U.S. 109, 115 (1984). The Exclusionary Rule, a judicially created remedy prohibiting illegally obtained evidence from being used by the government in the prosecution of a criminal case, is not applicable to evidence obtained through non-governmental action. *See Burdeau v. McDowell*, 256 U.S. 465 (1921). Where, as here, a private citizen searches or seizes the property of another and thereafter, turns the property or information over to the government, there is no basis to suppress the evidence seized unless the private citizen was acting as an agent of the government at the time of the search or seizure. Thus, Lisa Marandola's discovery of the suspected child pornography does not present any Fourth Amendment concern to this Court.

In the instant case, the issue before this Court is whether Lisa Marandola, as a third party, had either actual or apparent authority to consent to the search of the two computers. For the reasons set forth below, this Court finds that Lisa Marandola had actual authority to consent to the search of the two computers. There is no dispute that Lisa Marandola had access to the area searched, *to wit*: the living/family room and the two computers. The living/family room was part of the family's residence located at 4 Field Avenue, Lancaster, New York, a home that was purchased jointly by her and the defendant. Moreover, the two computers, the Dell and the Apple G4 were both purchased using marital funds and were located in the living/family room. Accordingly, the first prong of the two-prong test to determine whether third-party consent will validate a search, whether the third party has access to the searched area, is easily satisfied here. With respect to satisfying the second prong, it must be demonstrated

that Lisa Marandola had (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access. Here, the record before this Court conclusively establishes that Lisa Marandola had common authority over the area, had a substantial interest in the area and had permission to gain access. Specifically, Lisa Marandola testified that the Apple G4 computer was purchased using funds in a checking account jointly held by her and the defendant. Moreover, she further testified that she was never advised that she could not use the Apple G4 computer. Indeed, she had previously used the Apple G4 computer on prior occasions to check her e-mail. In addition, the Time Warner Cable Internet access supplied to the Apple G4 computer was in Lisa Marandola's name and was paid for using her own personal funds. Finally, all of the family photographs were stored on the Apple G4 computer and she had observed her daughter using the Apple G4 computer.

Defendant's argument that the Apple G4 computer was password protected does not alter the analysis of whether Lisa Marandola had authority to consent to its search. There is no dispute that Lisa Marandola testified that at times the defendant had password protected the Apple G4 computer. However, there is absolutely nothing in the record before this Court to suggest that any sort of password protection was enabled on February 25, 2008 or that Lisa Marandola's ability to use the Apple G4 computer on that day was in any way impaired. Indeed, all of the evidence in the record conclusively establishes that the Apple G4 computer and the files on the computer were readily accessible to any member of the household, including Lisa

Marandola. Accordingly, based on the foregoing, this Court finds that Lisa Marandola had actual authority to consent to a search of the Apple G4 computer.

Even assuming *arguendo* that Lisa Marandola did not have actual authority to consent to a search of the Apple G4 computer, the record before this Court supports the conclusion that she had apparent authority to consent to the search. Even in circumstances where actual authority is lacking, a third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent. *Georgia v. Randolph*, 547 U.S. 103 (2006); *see also Koch v. Town of Brattleboro*, 287 F.3d 162, 167 (2d Cir. 2002). A determination of whether apparent authority exists is based on the totality of the circumstances, whether the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe that the third party had the authority to consent. *See Rodriguez*, 497 U.S. at 188. Where, as here, a computer is located in a common living area of a marital home, the consenting party and other family members have access to the computer and used the computer in the past, and the computer was surrounded by children's toys and games, courts have upheld third party apparent authority to consent to a search. *See United States v. Buckner*, 473 F.3d 551, 555-56 (4th Cir.), *cert. denied*, 550 U.S. 913 (2007); *United States v. Morgan*, 435 F.3d 660, 663-64 (6th Cir. 2006); *United States v. Smith*, 27 F.Supp.2d 1111, 1116 (C.D. Ill. 1998).

Based on the totality of the circumstances presented to the Lancaster Police Department detectives who responded to the Marandola residence on February 27, 2008, Lisa Marandola had apparent authority to consent to a search of the Apple G4 computer. The detectives' belief in Lisa Marandola's authority to consent was reasonable. After independently discovering the suspected child pornography video clips on the Apple G4 computer, Lisa Marandola voluntarily contacted a sexual abuse hotline on February 27, 2008. Thereafter, during a telephone conversation, Lisa Marandola described to Detective Lynch what she had observed and later, when five detectives arrived at her home, she invited them into the home she shared with the defendant located at 4 Field Avenue, Lancaster, New York. The computers at issue, the Dell computer and the Apple G4 computer, were both located in the living/family room surrounded by children's toys and games. Lisa Marandola advised the detectives that the Apple G4 computer was purchased using funds in a joint checking account and that the Time Warner Cable Internet access was in her name and paid for out of her own funds. Moreover, Lisa Marandola testified that she had used the Apple G4 computer on prior occasions and was using it on February 25, 2008 to locate driving directions using Mapquest. Finally, although Lisa Marandola explained that in the past the computer had been password protected, the password protection was not enabled on February 25, 2008 and she was able to easily access the suspected child pornography. Accordingly, the totality of the circumstances presented to the detectives who responded to the Marandola family home on February 27, 2008 would lead a reasonable officer to conclude that Lisa Marandola had the authority to consent to the search of the Apple G4 computer.

Because this Court has concluded that Lisa Marandola had the authority to consent to the search of the Apple G4 computer, the defendant's assertion that the subsequent search warrant obtained in reliance on the images observed during the RCFL "preview search" and any evidence found thereafter must be suppressed, must fail. Based on Lisa Marandola's consent, the RCFL "preview search" was lawful and the use of the information obtained during the "preview search" to obtain a search warrant was proper and therefore, the evidence obtained pursuant to the search warrant should not be suppressed. Accordingly, based on the foregoing, this Court recommends that defendant's motion to suppress the evidence found pursuant to the search of the Apple G4 computer, Serial #XB2151Q4MK9, Model #M8493 be DENIED in its entirety.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED: Buffalo, New York
May 3, 2010

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**